Okay. Our next case and the final one for this morning is United States v. Andrews appellate number 20-2716. Mr. Gleason, we'll be glad to hear you. Thank you, Your Honor. I'd like to reserve five minutes for rebuttal, if I may. Be granted. May it please the court. John Gleason for Appellant Eric Andrews. The holdings we ask from this court low directly from the text of the relevant statute and policy statement and they're supported by all four of your sister circuits that have addressed the issues raised by this appeal. 3582 C1a in relevant part says that in any case upon the motion of the department or may reduce the term of imprisonment. If it finds that extraordinary and compelling reasons warrant such a reduction and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. Until the commission gains a quorum and can accommodate the first step back to amendments to the statute. I The 1B1.13 as as Matt has the second and the fourth and the sixth and the seventh circuits have held pertains only to motions for sentence reductions made by the director of the Bureau of Prisons. So let's assume that 1B1.13 as the district court already concluded does not place any kind of parameters around a district court judges decision, which is really where you would like us to be allow a district court judge to consider whatever the district court judge would like to be considered. My understanding from your briefing is that you think that the district court should consider the fact that the 924 C charges your client was convicted of in the sentence he received would not be the type of sentence he would receive today. And given the dramatic difference in the sense of the day in the sense he received that is the type of extraordinary and compelling circumstance a court should consider. That's what I understand your argument to be my crack. Correct. Although, I don't mean to interrupt the court. If you've got a next question. I did. The next question goes to this. I know I'm aware of this argument about it's not 924 C wasn't made retroactive. I'm aware of the McCoy case talking about the fact that it, the non the non retroactivity should not be a preclusion. But let me get to my my where I'm hitting a roadblock in the analysis. We're in the First Step Act. You've just talked about Section 403 jumped to 404. It's a circumstance in the First Step Act where Congress in its own words said, individualized determination of the impact of this change in sentencing or statutory change may be considered by a court. How do you get around the fact that Congress when it enacted the First Step Act, opened up the door for defendants to make direct motions for compassionate release, enacted a statute, it's not retroactive in the next section said, but there are individualized circumstances where we're going to essentially give retroactive benefit. How do you get past that, for a court to consider this type of circumstance as a factor that's appropriate for compassionate release? Apologies for the length. No problem, Judge. The Section 403 obviously alters the sentencing regime for 924 C. It is made retroactive, but only to cases in which sentence had not yet been imposed. There's a retroactivity built in, but you're exactly right. Unlike the very next section, which makes the Fair Sentencing Act amendments retroactive, there's no categorical presumptive eligibility. We know what that looks like. As of October 2020, there were 3,363 grants alone, forget denials, on the Fair Sentencing Act. But rather as the Fourth Circuit viewed it, we think correctly, the very same Congress, in the very same statute, opened a narrower window for the inmates who were subjected to all inmates, including those because the statute says in any case, not any case except defendants subjected to 924 C stacking. It opened a narrower window. And the one suggestion I'll make to the court, you said there's no parameters. There are parameters. The Seventh Circuit got this exactly right. This doesn't create a kind of a Wild West, as the Seventh Circuit put it, where every district judge can do what she wants. The terms of the statute naturally cabin the availability, make this window narrower by saying there needs to be extraordinarily compelling reasons. And courts like this one will review for abuses of discretion, any grants of sentence reduction. So as the Fourth Circuit put it, it's not incompatible at all to say it's not categorically retroactive in a way that produces the kind of numbers of sentencing reductions you see pursuant to 404 of First Step. That's why we only have in this... We're two plus years into this. It's just a couple of dozen, a few dozen cases, a trickle compared to what categorical retroactivity would produce. So this notion that... And the other thing I'll say, Judge Schwartz, is this. This statutory regime shows that Congress knows exactly how to place a consideration out of bounds. 994T says rehabilitation alone cannot be a basis for a sentence reduction. So in a statutory regime that admits of no exception on its face, in which Congress demonstrated that it knows how to place a particular consideration out of bounds, it seems odd to put it... It seems anomalous to engraft onto the statute. In effect, this is in effect the government's argument would be in any case involving a motion of the defendant, the court can consider extraordinary and compelling reasons, except they can't consider the fact that Congress decided 924C sentences were so onerous, they would dramatically reduce them. I suggest to the court that most important, text is text. That limitation finds no support in the text of the statute. You mentioned extraordinary and compelling, and I know you take issue with the district court's definition of compelling. Yes. I kind of understand why it's probably not tethered to some of the things that you think should be considered, but I'd like to know what do you think? But you can tell me why, but I'd like to know, you get to define it. You have some experience in this area. Give us a definition. I think obviously the terms have their own meaning. And to say that a reason that might warrant a reduction in the kind of holistic, individualized review that this statute contemplates. To say for example, that age at the time of the offense, we know so much more now than we did at the time Eric Andrews was sentenced about the significance neurologically, from social science point of view about age. And as Judge Rubino said, to say that that can't be considered a compelling reason, because there's no significant collateral or secondary harm. The only harm is the harm of continued imprisonment. With all respect to the district judge, the harm of continued imprisonment is why this statute exists. So- Mr. Gluskin, I think my question might not have been clear. I'm asking you, what is, if we had to give a district court a test for what constitute extraordinary and compelling circumstances? Your answer seems to be, I can answer compelling by way of example, rather than, and you know it when you see it, as opposed to some kind of, is it critical? Is it significant? Is it highly important? You follow what I'm saying? I'm trying to, because we didn't care for the, it has to have sort of a secondary collateral consequence to be compelling. I understood your argument on that. Your Honor, I think you should instruct the district judge and the judges in the third circuit, as the second circuit did in Brooker, that they can consider the full slate of reasons that judges in their discretion consider appropriate, whether individually or viewed collectively, to warrant a reduction in the sentence. Obviously, to the extent that going forward, this vehicle for reducing a sentence is going to be subject to appellate review. The contours of this power already bounded by the words extraordinary and compelling will be further defined by the decisions of the court. But I think there is no basis in the place out of bounds rehabilitation, age, prison record, family support, community support, attributes of the offense conduct, other attributes of the offender. Eric Andrews grew up without a father, abused by the stepfather. He suffered from substance abuse beginning at age 14. All of these circumstances, Congress contemplated and not as permissible bases upon which a court might decide that a case presents extraordinary and compelling reasons. And if I can, Judge Schwartz, I think it's important, I'll suggest to the court, it's important to understand the role that Congress contemplated 3582C1A to have back when it was enacted, which is not the role to which it was relegated by the Bureau of Prisons. It's not just age and infirmity and medical status. It is in part designed to provide a safety valve or unusually long sentences based on changed circumstances over time. It's an opportunity for courts. It's narrowly circumscribed, which is why there's a relative trickle of these cases. But you don't have to go past Eric Andrews case to see the dire need for this kind of judicial check on prosecutorial discretion after 16 years that the defendant is in prison. So I'm going to suggest to the court that you should not limit and there's no basis for you to circumscribe the review. And over time, I'll suggest there may be cases in which this court decides that there are particular considerations that either were insufficiently compelling, insufficiently either independently or in the aggregate insufficient to warrant a sentence reduction. But there's no basis in the text of the statute for you to limit the slate of reasons that judges can consider. Thank you. Before I ask my colleagues if they have questions, just one of the questions. Was there ever a clemency application made? I asked that because the district court made an observation about it. And I was wondering if you know whether or not a clemency application was ever filed. I don't care about the disposition. I just want to know if it was filed. I think not judge. And and I know you don't care about the disposition. This category of defendants, all practical purposes, clemency proof. And you're not going to find even in the Obama administration, those seven hundred and seventeen hundred and fifteen clemencies. You're not going to find an inmate with stacked nine twenty four C's in that list. Thank you, Judge Porter. With the long and expansive answer that you gave a minute ago to Judge Schwartz's question about extraordinary compelling, would you give the same answer if next week the sentencing commission had a quorum and they reissued the very same policy statement that's been in use for a long time? Then would you still give the same answer about all the things that a district judge can consider? Yes. Why is that? This time I gave you a short answer, Judge. That's because on the face of one point thirteen, I'm focusing on the face of the policy statement. The court determines that extraordinary and compelling reasons warrant the reduction. I'll suggest to this court for a number of reasons that there's no cabining of that anywhere in the policy statement or in the commentary. And to the extent the commentary is read the way the government would like you to read it, it's impermissible under this under this two other ways. I'm not going to give you a long answer, but there is no proper cabining of that discretion to grant a reduction anywhere in the policy statement or commentary. So the policy statement says you can consider terminal illness for purposes of extraordinary and compelling age, family circumstances and other reasons determined by the Bureau of Prisons. If a district judge were to analyze a motion using the, I suggest, expansive rationale that you've given, I don't see how that would be consistent with the Bureau's policy statement. Well, if they issued if they issued the exact same policy statement, I don't know if they're going to or not. I understand that. And if they include in commentary one D other reasons and they include that precatory language as determined by the director of Bureau of Prisons. Yeah. Okay. Got it. In that sense, then you're going to have a circumstance, Your Honor, in which the commentary to the guideline inures to the significant detriment to the defendant in a way that the text of the policy statement does not. And I'm going to suggest that in pursuant to this court's decision in this year, I'll suggest that according a more onerous interpretation that the policy statement writ large, based solely on a statement in the commentary, you know, I'm not fighting your hypothetical. Yeah. Obviously, the commission's whether or not it wants to relegate to the Bureau of Prisons or to Article III judges, the determination of extraordinary and compelling reasons. But if they do it, if they relegate it, if they vest that, I don't think they ever vested that discretion in BOP. But if they do so in this way, in a subsequent amendment, I'm going to suggest that that would be flatly contrary. It would be a more restrictive regime than that permitted by the policy statement itself, and for that reason, wouldn't fly. Okay. I understand all of that. I get all that argument. And if that day comes, you know, I might agree with you. My question, and maybe it wasn't clear enough, it really goes back to 3582 and the First Step Act. It seems to me that what Congress was doing was saying, look, the Bureau of Prisons hasn't acted responsibly as the gatekeeper. So we're taking the keys away. Now, inmates can make their own motions. And that was an enormous change. Congress could have, but I don't see where they did change the meaning of extraordinary and compelling. They still specifically delegate to the Sentencing Commission, the task of defining extraordinary and compelling. They did this all against a background of the existing policy statement and many years of jurisprudence using that policy statement. So while I get the procedural change, I don't see how this affected a big substantive change, especially if it's just for this weird lacuna that we're in because there's no quorum and everything will go back the way it was as soon as there is a quorum. That seems to me highly unlikely. But Judge, let me suggest several reasons why, even if you were to conclude in light of the circumstances you just described, that 1B1.13 were somehow applicable, why there should be no constraint of the sort you described on the discretion of the district judge. First, 3553A5 explicitly contemplates this situation. That right under our noses, sometimes we overlook these things that operate in every sentence reduction. It says that judges have to consider applicable policy statements subject to congressional enactments that have not yet been incorporated into the guidelines. So I'll suggest to you that based solely on that you have to, knowing full well that, as you put it, the purpose was to take BOP out of the middle. And the most critical purpose of first step in this regard is not in legislative history, it's on the face of the amendment to increase the use of sentence reduction. So when assuming 1B1.13 is applicable, it has to be applied subject to that as yet to be accommodated statutory enactment, that statutory change. Second, Dorsey v. United States tells us that statutes trump guidelines. And specifically, Justice Breyer's decision directs the lower courts to look at the structure and purpose of a legislative enactment. And that's in that case, the Fair Sentencing Act. As you recall, Dorsey did for Fair Sentencing Act, what 403's limited retroactivity did for 924C, made it applicable to cases where structure of the statute, the intent of the statute, and effectuated. And if the structure and intent of the First Step Act's amendments to the Compassionate Release Statute were to increase the use of those sentence reductions, it would be anomalous until you have a commission amendment for you to look at the statute. And in a way, this goes back to Judge Bibas's concurrence in your Nasir case. It would be odd. It's a rule of lenity principle. It would be odd to look at this set of circumstances and construe it against defendants, given that congressional purpose as stated on the face of the statute. And lastly, I've already mentioned this, I won't repeat it. You've got this... I'm going to suggest to the court, by the way, I might have mentioned this at the outset. As determined by the Bureau of Prisons language in 1D, never purported to limit the discretion of district judges. The same commentary says district judges are uniquely positioned to determine whether extraordinary and compelling reasons. That language is a vestige of a regime in which there could be no motion, but for such a determination by the Bureau of Prisons. There's a district judge decision, one of our client's cases, Judge Trenga in Eastern Virginia in the red decision that we cited, does an excellent description of this. That's language that wasn't intended to vest in BOP judicial discretion that the other part of the commentary explicitly says judges are uniquely positioned to exercise. Rather, it's just a reflection, it's a vestigial reflection of a regime where by definition, the motion wouldn't be before the court, unless the BOP made that determination. So I'll suggest to the court, there's nothing to worry about in 1D, to the extent you think there's to worry about it, Dorsey, 3553A5, and Nasir, all eliminate that constraint on district judges. Thank you, Judge Meady, do you have any questions you'd like to ask? None at this time, thank you. Judge Porter, anything further? No. Okay, Mr. Gleeson, we'll have you up on rebuttal. Mr. Zosmer. Thank you. Thank you very much. Good morning, Your Honor. May it please the court, Robert Zosmer on behalf of the government. I want to make two fundamental points. First of all, no one is suggesting, of course, that this is not a draconian sentence that Mr. Andrews is facing. But there hopefully will be remedies for that if others agree with that proposition, both in the legislature, which sets criminal penalties, and in the executive branch in the president who has the clemency power. But the important point right now is unfortunately for on the grounds of the length of that sentence. The other important point to make here is that what my friend Judge Gleeson is suggesting is absolutely profound. And the courts that have addressed this, the appellate courts that have addressed it, with all respect, I must say, have not grappled with the consequence of what is being asked for here, which is nothing less than the most profound change in federal sentencing that we've seen since Booker in changing the finality and the certainty of federal sentencing. What was very informative in Mr. Gleeson's presentation a few minutes ago was when he talked about what would be extraordinary and compelling circumstances. And what he listed, as eloquently as he always is, what he listed was the background of the defendant, his age, his poor upbringing, what he's done in prison. What we heard in those couple minutes is the same sentencing presentation that is made every day in federal court under Section 3553A. It is a reevaluation of sentencing, pure and simple. And what's very striking about the Compassionate Release Statute, about trying to use the is that there's no limit. There is no limit on the number of times that a Compassionate Release motion may be presented. There is no limit on the time period in which a Compassionate Release motion may be presented. And so, if what Mr. Gleeson is suggesting is permissible, that a court can basically reevaluate the 3553A factors at any time and as many times as it is and I don't think it's hyperbolic, we say that this would demolish the structure that was set up by the Sentencing Reform Act. But Mr. Gousmer, doesn't Compassionate Release contemplate, and I think this is language from other cases, it's sort of an exception to finality. It absolutely does, Your Honor. But this is also why it has always been restricted. It's why, first and foremost, Congress did something very notable here, and it has never changed this. It limited the factors to those identified by the Sentencing Commission. Congress declared, we are not going to have 900 or so individual federal judges deciding in different cases who they want to reevaluate. We're going to restrict this on a national basis to the criteria established by the Sentencing Commission. And the Supreme Court in Dillon tells us that is binding. When Congress uses that language, consistent with the applicable policy statement of the Supreme Court, that is binding. And so Congress, and also, of course, we have 994-T, where Congress directs the Sentencing Commission to identify the circumstances that will allow Compassionate Release. That's extremely significant. And then what the Sentencing Commission has then done consistently, and as the Bureau of Prisons did before it, going back nearly a half century, is limit Compassionate Release to the traditional considerations that we would all agree are appropriate, which is changes in the individual circumstances that are profound and that affect a person's ability to serve the sentence. So it's always been a limited remedy. Is there authority for the proposition that says there has to be a circumstance that was unforeseeable and changed since the original imposition of sentence in order for someone to qualify for Compassionate Release? Because I thought there was a law that says the opposite, that it doesn't have to be an unforeseen circumstance. It does not, Your Honor, because Congress, again, directed the Sentencing Commission to define the circumstances. And the Commission has stated that it does not have to be unforeseen as of the time of sentencing. But it has still restricted this quite a bit. And very importantly, because that, as we've said many times, is consistent with the basic purpose of the Sentencing Reform Act. And the goal of the Sentencing Reform Act, to have certainty in sentencing, to have finality in sentencing, it's not just for the benefit of government prosecutors. It's not just for the benefit of judges to keep their dockets from being overloaded for the rest of time by requests for reconsideration of sentences. It's for the benefit of the public, which has the right to finality in the completion of criminal cases. It's for the benefit of victims of crime who don't need to relive the circumstances of the criminal offenses over and over and over again for the rest of time, which is why- But much of your argument, you're conceding that, you're talking about the importance of finality, you've conceded that compassionate release motions is an sort of exception to finality. But a lot of your argument seems to require us to have to be bound by 1B1.13, where all the other circuits have said, by its plainsterms, it's not binding on a motion brought by a defendant. So here's- Assume this court were to join those other courts, and you no longer can lean on 1B1.13 as your basis. What is the argument to say that the district court was wrong not to consider what Congress did when it decided to eliminate the stacking rule as it was understood to apply when Mr. Andrew was sentenced? Sure. And I hope I have the benefit to talk about 1B1.13 for a minute because, as Your Honor notes, we do believe it is still binding. But let me answer Your Honor's question. Even if 1B1.13 does not exist at all, the statute requires that a court grant relief only based on an extraordinary and compelling reason. And our position is that it is not extraordinary when Congress explicitly states that a change in sentencing law does not apply retroactive. It is not extraordinary. It is ordinary for a court to enforce that and not to permit relief based on Section 924C stacking alone. This is where the Sixth Circuit has come out. The Sixth Circuit has said in the Jones case that 1B1.13 is not binding. But then last week in the Tomes case said, but we are not going to let it serve as an end run around this explicit declaration by Congress that 924C stacking is not retroactive. I also want to make a really important point about this particular case, about the Andrews case, which also illustrates just how radical the suggestion is that is being presented here. Mr. Andrews has not served even the sentence Congress requires under current law. So under current law, he was convicted of 13 924C offenses. One can debate whether that was appropriate or not. But that is the record. That is what happened in the case. And it is consistent with the law. Congress, when it changed the Section 924C in the First Step Act, left stacking in place. All that it did was change the sentence for a successive 924C from 25 years to the lower mandatory penalty if there was no pre-existing conviction. So if he is convicted today, it is a mandatory 91-year sentence, 7 times 13. The position that is put forward by the defense here is not just that it is an extraordinary circumstance that he got a 300-year sentence in the past. For him to get relief today, their position is it is an extraordinary circumstance today to impose the mandatory minimum sentence that is required today by Congress. And what this means, and Judge Rubarino pressed us on this at the oral argument in the district court, what this means is that someone, if you accept this view that this is an extraordinary circumstance, that someone is serving a very long mandatory sentence, that what that means is that a court could impose a mandatory sentence today, 10 years, 15 years, whatever it is, as required by Congress, and then come back 30 days from now after the defendant has exhausted his request to the warden as required by the statute, and say, this is an extraordinary circumstance. I don't agree with that 15-year mandatory sentence. I'm reducing it to a year because I find it extraordinary. This is not extraordinary. So that's my answer to your question, Judge Schwartz, that if 1B1.13 does not exist, it does still, we have our second argument here, which I think is very compelling, which is that there's no extraordinary circumstance when all you're arguing is for relief based on a non-retroactive change in law. This is not to suggest that changes in law and changes in sentencing and changes of the view of criminal punishment can never be relevant in a compassionate release motion, which I think you alluded to in your question as well. Someone may present an extraordinary and the classic circumstance today would be, say, somebody who is profoundly at risk from the COVID-19 virus, and then thousands of those people are receiving relief today. When presented with such a motion, the court today has to, once they get past the threshold and say, yes, this is extraordinary and compelling, you have a terminal illness, you have a grave family circumstance, the court then has to consider the 3553A factors. And of course, the appropriate length of the need for continued punishment comes into play at that point. But what we have here is simply a suggestion that the current sentence is too long based on what Congress has said. But what else did Congress say? Congress said in Section 403, this does not apply retroactively. For better or worse, and many people may reasonably disagree with this, but for better or worse, Mr. Andrews is serving the sentence that this Congress currently believes he should be serving, because it decided, and it's actually consistent with the ordinary approach to retroactivity, it decided that previously imposed criminal penalties would not be changed. And it said it explicitly. And then as your honors have noted, in the very next section, in Section 404, it did something different for the application of the Fair Sentencing Act of 2010. Congress knew exactly what it was doing in passing this. And of course, we have to heed the congressional directive when it comes to criminal sentencing. The McCoy case in the Fourth Circuit really goes the furthest in addressing the 924C context before this court. And of course, we respectfully disagree with that decision. But even McCoy is different in that the four defendants at issue in that case had all served more than the mandatory sentences they would receive today. Mr. Andrews' case is an outlier even from that, in that he has not served the mandatory sentence. He wants permission now for a district court, based on the compassionate release statute, to abrogate the current mandatory sentence. And of course, we don't think it's permitted even to change a past sentence. Mr. Zosmer, you've talked about extraordinary and compelling. I've asked your adversary for a definition. I understand his point of view is the district court's definition on the compelling front was inaccurate. What test should we, and you two have had many opportunities to propose tests. So I'm not talking to two inexperienced folks. So what test do you think we should articulate for the benefit of our friends who have to apply it? Well, I think the first test, and this gets back to 1B1.13, is that Congress did direct that a reduction should be consistent with the policy statement. And even though there are certainly parts of the policy statement that need to be updated in referencing BOP, the core of the policy statement is application note one, which heeds the congressional directive and defines extraordinary circumstances. And as we point out in our brief, if the Sentencing Commission had set application note one as a standalone provision, there's no question that it would be enforceable today. And it's a very reasonable approach. So even if you disagree, I think 1B1.13 is not accurate. I think the Seventh Circuit and the others are correct that it still provides the guidance. It's still something the court should heed. And they seriously risk abusing their discretion by going beyond these traditional factors of medical age and family circumstances. So then do you agree with Mr. Gleason's position that the district court erred in its definition of compelling as a significant or collateral harm? I don't. I think if this were a case in which someone did present an extraordinary and compelling reason, then the district court does have some measure of discretion. And the factors that Judge outlined are very reasonable in explaining what extraordinary and what compelling means. But I don't know that we get there, because I think you have to, again, establish that threshold. And that is defined by the Sentencing Commission. And if you throw out 1B1.13 completely, I would still suggest, based on historical practice, that that is what's extraordinary and compelling. It's when someone has individual circumstances relating to their health or age or family responsibilities that take us outside the ordinary case. But that what is not extraordinary is to apply new laws, which don't apply generally, or to reevaluate the 3553A factors. Mr. Gleason made the point, and it's made in their reply brief, and he made it again today. He said, text is text, which is, of course, correct. And that if we look at the text of the First Step Act of Section 3582C, we see that this is permissible. And in fact, we see exactly the opposite. Congress, yes, it said it was expanding the application of compassionate release. And it absolutely did that. By allowing inmates to go directly to court, what happened is what everyone knew would happen, which is that there was a huge increase in the grant of compassionate release. But all it changed in 3582C is saying an inmate may go to court. There is not one word of change in the criteria. It still says extraordinary and compelling. It still says it has to be consistent with an applicable policy statement of the guideline. And so when Mr. Gleason says Congress opened a narrower avenue for inmates to get additional relief, where did they do that? By leaving the substantive standard exactly the same. And not just that. Here's the real oddity here. Not just do we have to read into allowing inmates to go to court to mean that there's a new substantive definition, but that what Congress would also have had to foresee if this is what it was trying to do, even at the same moment it was declaring the 924C change not retroactive, what Congress also had to for two years, which is an incredibly odd development that of course no one foresaw. Because everybody agrees that the moment the Sentencing Commission comes back, in all likelihood it will declare that we're not allowing resentencing for the rest of the time based on reconsideration of the 3553A factors. So as statutory construction goes, with all due respect, this is exceedingly strange to say that Congress, simply by allowing inmates to go to the substantive standard, change the finality of sentences, profoundly altered the basis of federal sentencing that's existed for the last 35 years. It's just not acceptable. In saying all of this, as strongly as I'm advocating this, I'm not disputing that this is a severe sentence here. And I'm not disputing that it is out of line, obviously, with the effective life sentence today as well. These are very important matters. But they are matters that the law, the Constitution, confer on Congress as the body that sets criminal penalties. And then on the president, who ratifies and has to approve whatever Congress passes. And in addition, is the one individual in our system who has the clemency power. Should there be something different? Should 403 be made retroactive? You can make great arguments for that to Congress. Should there be a new parole system? Should we have an ability for either a court or maybe a parole body to reevaluate long sentences at some period of time based on everything that Mr. Gleason very articulately laid out? These are incredibly important issues that will be debated in the appropriate forums. But we here are in a court of limited jurisdiction. Thank you, Mr. Zasmer. Let me ask Judge Porter, do you have any further questions you'd like to ask? No. Judge Mady? Nothing from me. All right. Mr. Zasmer, thank you for your arguments. And we'll hear from Mr. Gleason on rebuttal. Mr. Gleason, we can't hear you. Thank you, Judge. No problem. There's nothing new about this authority that is described by my adversary as profound. What Congress did was breathe life into an ambit of authority that gave district judges an opportunity to check prosecutorial discretion to fix sentences that shame us all. I want to do a couple of things, please. One is highlight the difference between Holmes in this case. Holmes, a defendant who received a 20-year sentence two years later, seeks this relief. At 198 of the joint appendix is the legislative history that describes precisely what Congress had in mind back in 1984. The committee believes that there may be unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances. That's what this case presents. Holmes represented an attempt to do something fundamentally different. The most fundamental defect, in my respectful opinion, in the government's position is this notion advanced by my adversary that the sentence that Eric Andrews is serving is one that Congress believes currently he should serve, because today his stacked sentences would be 91 years. That is so misapprehensive. These are not automatic. These stacked sentences are not automatic. They are triggered at the discretion of the prosecutor, and they're not triggered for everyone. Not all eligible 924C defendants get the stacked 924Cs. The whole purpose of 3582C, which is not bounded, the discretion to reduce the sentence, is not bounded by any mandatory minimum that was applicable at the initial sentencing, and it's not bounded, and there's no way you could read such a boundary into it. It's not bounded by any mandatory minimum that would be applicable if the defendant were being sentenced for the check on exercises of prosecutorial discretion that produce sentences that shame us all, whether it's 311 years or 91 years. This is the limited mechanism Congress created. Mr. Gleeson, so your view of compassionate release, that 3582C is to check prosecutorial discretion? Is that what you're saying? It's not its only purpose, but a purpose expressly stated by the Congress that enacted it was to permit the... These would include cases of severe illness. This is, again, 198. Cases in which other extraordinary and compelling circumstances justify a reduction of an unusually long sentence, and then it goes on to say in cases where the commission made a retroactive amendment. I understand your position. Thank you. Okay. So the... And on the finality issue, sentences have precisely the finality Congress chooses to accord them. And this is... I started with the statute. I want to end with the statute. There's no exception. The statute admits of no exception that would disqualify Eric Andrews from a sentence reduction. And this kind of chicken little, the sky is falling, the pillars of the republic are crumbling. That doesn't accurately describe what's happened precisely because this was not made categorically retroactive. And if there are instances in which the government exercises its discretion for a 19-year-old who commits these crimes... I'm not quarreling with the seriousness of the crime. He served serious punishment. But if there are too many instances for the government's taste where sentences like this need to be corrected, they have to take that complaint to the Congress. The text of the statute that Congress enacted and then amended in the limitation. And I'll suggest to you that neither in logic nor looking at cases like this would such an exception make any sense. Unless the court has further questions, I'll rely on our brief. Judge Porter. No, thank you. Judge Mady. Nothing further. Okay. Gentlemen, thank you very much for the excellent arguments and the extremely helpful briefing. The court will take the matter under advisement. Thank you.